# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.

CALVIN JAMES,

          Defendant.

Case No. 04-CR-285-18-JPS

**ORDER**

1. **INTRODUCTION**

    In July 2006, Defendant Calvin James was tried by a jury and adjudged guilty of conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and 18 U.S.C. § 2, for his involvement in "a loosely organized, long-running drug-trafficking ring" known as the Cherry Street Mob. ECF Nos. 849, 851, 1050; *see also United States v. James*, 540 F.3d 702, 704 (7th Cir. 2008). The jury made affirmative findings as to the drug quantities, answering "yes" as to whether the offense involved 5 kilograms or more of cocaine and "yes" as to whether the offense involved 50 grams or more of cocaine base. ECF No. 851. In February 2007, the Court sentenced Defendant to a guideline sentence of a total term of 360 months' imprisonment, to be followed by 10 years' supervised release. ECF No. 1050. Defendant has now served approximately 17 years of his sentence and

has an anticipated release date of December 20, 2030. ECF No. 1623 at 16; ECF No. 1630 at 3.[1]

On May 23, 2022, Defendant filed a motion for a reduction in his sentence pursuant to the First Step Act, along with a motion to seal the same. ECF Nos. 1622, 1623.[2] The Court set a briefing schedule on the motion for a reduction in sentence and, following a few extensions of time, the motion is now fully briefed. ECF Nos. 1623, 1630, 1638. For the reasons set forth herein, the Court will grant the motion and reduce Defendant's sentence to a total term of 240 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release.

## 2. LEGAL STANDARD AND PROCEDURAL BACKGROUND

In 2010, Congress passed the Fair Sentencing Act. Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act was intended to reduce the disparity between sentences for powder and crack cocaine. Consequently, the Fair Sentencing Act greatly increased the quantities of crack cocaine required to trigger progressively harsher statutory penalties. Specifically,

> The [Fair Sentencing] Act increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5–year minimum and from 50 grams to 280 grams in respect to the 10–year minimum (while leaving powder at 500 grams and 5,000 grams respectively). § 2(a), 124 Stat. 2372. The change had the effect of lowering the 100–to–1 crack-to-powder ratio to 18–to–1. (The [Fair Sentencing] Act also eliminated the 5–

---

[1] *See also* Fed. Bureau of Prisons, Find an inmate., https://www.bop.gov/inmateloc/ (last visited Oct. 18, 2022).

[2] The Court will grant Defendant's motion to seal his moving brief, as it contains confidential information. ECF No. 1622.

year mandatory minimum for simple possession of crack. § 3, 124 Stat. 2372.)

*Dorsey v. United States*, 567 U.S. 260, 269 (2012).

In 2018, Congress passed the First Step Act of 2018, § 404, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("Section 404"), which made it possible for already-sentenced defendants to request that the provisions of the Fair Sentencing Act be applied to their cases retroactively. *See also* 18 U.S.C. § 3582(c)(1)(B) (courts cannot modify a term of imprisonment once imposed except where expressly permitted by statute). Section 404(b) provides that:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

The inquiry under Section 404(b) is two-step: "First, a judge considering a motion for a reduced sentence under the First Step Act is faced with the question of whether the defendant is eligible for a sentence reduction. If the defendant is eligible, then the court faces the question of whether it should reduce the sentence." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020).

As to the first prong of the Court's inquiry under Section 404(b), the parties agree that Defendant is eligible for a sentence reduction. ECF No. 1623 at 6; ECF No. 1630 at 5.³ The parties contest, however, the appropriateness of a sentence reduction, raising myriad arguments for and against such a reduction.

---

³*See also United States v. McSwain*, 25 F.4th 533, 538 (7th Cir. 2022) (holding that when a defendant has been sentenced in a multi-drug conspiracy, if one of the drugs subject to the conspiracy constitutes a covered offense and triggers a lower statutory penalty range, but another does not, the defendant is still eligible for relief under the First Step Act).

## 3. ANALYSIS

### 3.1 Sentencing Parameters

The Court begins with the sentencing parameters. When considering sentence-reduction motions under the First Step Act, courts' discretion "must be informed by a calculation of the new sentencing parameters." *United States v. Blake*, 22 F.4th 637, 641 (7th Cir. 2022); *see also United States v. Corner*, 967 F.3d 662, 666 (7th Cir. 2020) (courts must "first determin[e] the parameters of what [they] *could* do" before determining "what to do") (emphasis in original). As to the sentencing guidelines, the parties agree that, even under the Fair Sentencing Act, the guideline range of 360 months to life as calculated and applied at Defendant's February 2007 sentencing remains unchanged. ECF No. 1639 at 3. Specifically, at the time of Defendant's original sentencing, Defendant's base offense level was 38, with a two-level enhancement for possession of a firearm, for a total offense level of 40, and a criminal history category score of VI based on 17 criminal history category points. ECF No. 1630 at 1–2. The Fair Sentencing Act decreases Defendant's base offense level by two points, for a total offense level of 38. ECF No. 1630 at 2; ECF No. 1624 at 14 (citing U.S.S.G. §2D1.1, n. 8(D)). A total offense level of 38, combined with a criminal history category score of VI, still results in a guidelines range of 360 months to life. Thus, the 360-month term of imprisonment imposed by the Court in February 2007 continues to be a guideline sentence.

Defendant argues that his criminal history points should be reduced by two points for a total of 15. First, he argues that his 1990 conviction for disorderly conduct no longer counts because he was assessed only a fine. ECF No. 1623 at 13 (citing U.S.S.G. § 4A1.2(c)(1) (disorderly conduct convictions count only if a person receives a sentence of more than one year

probation, at least 30 days in prison, or if the conviction is similar to the charged federal offense). Second, he argues that the one point assessed for an offense occurring within two years after release from custody also no longer counts because it has been removed from the guidelines. The Court concurs with Defendant on both arguments and will reduce his criminal history points to 15. Defendant further argues that the point attributed to his ticket for driving without a license should not be counted because "[s]uch an offense almost never counts for points." ECF No. 1623 at 13. However, the state court, as to that offense, ordered Defendant jailed for 60 days, rendering the offense calculable under the guidelines. The Court will not deduct any points for this offense. Defendant's reduced criminal history points still lead to a criminal category score of VI which, in combination with the total offense level of 38, still results in a guideline range of 360 months to life.

Defendant further contends that his base offense level should be reduced to 34, for a total offense level of 36, due to the sentencing disparity between crack and powder cocaine. *Id.* at 14. Specifically, Defendant urges the Court to apply a one-to-one crack to powder ratio in lieu of the 18-to-one ratio that applies currently. *Id.* While the EQUAL Act, which eliminates such disparity, has passed the House of Representatives, it has not yet been passed by the Senate. H.R. 1693, 117th Cong. (2021–2022). Until the EQUAL Act becomes law, the Court declines to further decrease Defendant's base offense level on this basis. As the Government concedes, however, "when reducing a sentence under Section 404, the court may impose a new sentence below the guideline range, whether or not the range has changed." ECF No. 1630 at 5 (citing *United States v. Hudson*, 967 F.3d 605, 611–12 (7th Cir 2020)).

The Court next turns to the applicable statutory range. While the amount of crack for which Defendant was adjudged guilty—50 or more grams—carries a lower base statutory range following the Fair Sentencing Act, the amount of powder cocaine for which Defendant was adjudged guilty—5 or more kilograms—does not. The latter still falls under 21 U.S.C. § 841(b)(1)(A) and carries a base statutory range of 10 years to life. On this point, the parties agree.

The parties' dispute as to the applicable statutory range centers around Defendant's sentencing enhancement. In July 2006, the Government filed an information under 21 U.S.C. § 851 related to Defendant's prior conviction of possession with intent to deliver controlled substances in Milwaukee County Circuit Court Case No. 1991CF910814 (the "1991 Wisconsin Conviction"). ECF No. 836. The Court determined, based on the information as well as the addendum to the pre-sentence report, that the Government had met its burden of proving Defendant's prior conviction, and noted that the statutory mandatory minimum was increased to 20 years in light of the Section 851 enhancement. ECF No. 1048.

Defendant argues in the present motion that applying the Section 851 enhancement was an error. First, Defendant argues, citing intervening Seventh Circuit case law, that the 1991Wisconsin Conviction did not qualify as a "felony drug offense" under the law in existence at the time of his sentencing, such that the mandatory minimum should have been the baseline 10 years and not the enhanced 20 years. ECF No. 1623 at 8. Second, and alternatively, Defendant argues that the First Step Act modified what qualifies as a predicate offense triggering a Section 851 sentencing enhancement under Section 841(b)(1)(A), and that the 1991 Wisconsin Conviction no longer qualifies. *Id.* at 12. In response, the Government

argues that the Court is not required to consider intervening case law in deciding Section 404 motions. ECF No. 1630 at 6. The Government further argues that Defendant himself requested the 20-year mandatory minimum sentence to be imposed at his July 2007 sentencing, which request the Court rejected, imposing a 360-year guideline term of imprisonment. *Id.* at 7.

The Government's arguments are unavailing. As Defendant points out in his reply brief, *Concepcion v. United States*, decided by the U.S. Supreme Court on June 27, 2022, holds that district courts may consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act. 142 S.Ct. 2389, 2404 (2022). In the same breath, the Court instructed district courts that they "bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments"; this obligation means that "a district court *must* generally consider the parties' nonfrivolous arguments before it." *Id.* (emphasis added). In the time since the opinion was entered, courts considering this language have construed it to mean that where a party raises arguments relating to intervening changes of law or fact, the court must consider them. *See, e.g.*, *United States v. Hebron*, No. ELH-08-086, 2022 WL 2716506, at *17 n.16 (D. Md. Aug. 29, 2022). So too does the Court. Such decision moots the Government's second argument regarding what took place at the original sentencing.

In the time since Defendant's original sentencing, the U.S. Supreme Court held that, when determining whether a prior state conviction qualifies under a federal recidivism statute, courts must look to the elements of the state crime and determine whether they are broader than those in the federal statute. *Mathis v. United States*, 136 S.Ct. 2243, 2257 (2016). Then, "[i]f, and only if, the elements of the state law mirror or are

narrower than the federal statute can the prior conviction qualify as a predicate drug offense." *United States v. De La Torre*, 940 F.3d 938, 948 (7th Cir. 2019). Thereafter, in *United States v. Ruth,* the Seventh Circuit held that the Illinois statute making it unlawful to possess with intent to deliver cocaine was overbroad as compared to federal law and, therefore, a conviction thereunder could not serve as a Section 841 predicate for a Section 851 enhancement. 966 F.3d 642, 647 (7th Cir. 2020). This is so because the Illinois statute defined cocaine as follows:

> Coca leaves and any salt, compound, isomer, salt of an isomer, derivative, or preparation of coca leaves including cocaine or ecgonine, and any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine (*for the purpose of this paragraph, the term "isomer" includes optical, positional and geometric isomers*)[.]

*Id.* (emphasis added). In contrast, under federal law, cocaine is defined to include only its "optical and geometric isomers." *Id.* Specifically, under federal law, cocaine is defined as follows:

> [C]oca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812, Schedule II(a)(4); *see also* 21 U.S.C. 841(b)(1)(A)(ii). Thus, the *Ruth* court held, a plain comparison of the Illinois definition of cocaine to the federal definition of cocaine revealed that "the state statute categorically covers a larger swath of conduct than its federal counterpart," meaning that

a conviction thereunder could not qualify as a Section 841 predicate for a Section 851 enhancement. *Ruth*, 966 F.3d at 648.

The 1991 Wisconsin Conviction was for a violation of Wis. Stat. § 161.41(1)(m), which makes it unlawful to possess with intent to manufacture, distribute, or deliver, *inter alia*, cocaine or cocaine base.[4] In 1991, Wisconsin law defined cocaine as follows:

> Coca leaves and any salt, compound, derivative or preparation of coca leaves. Decocainized coca leaves or extractions which do not contain cocaine or ecgonine are excluded from this paragraph. The following substances and their salts, isomers and salts of isomers, if salts, isomers or salts of isomers exist under the specific chemical designation, are included in this paragraph:
>     1. Cocaine, except as specified in s. 161.14(7)(a).
>     2. Ecgonine.

161.16. Schedule II, W.S.A. 161.16 (1991) (West). In 1995, as part of its amendments to the controlled substances act, the Wisconsin legislature revised the statute to define isomer more narrowly as referring to only certain isomers. 1995 Wis. Act 448 § 466.6; *see also* Wis. Stat. § 961.01(12g). However, Defendant argues that, as written in 1991, Wisconsin's definition of cocaine was, as in *Ruth*, "categorically broader than the federal definition." *Ruth*, 966 F.3d at 647. Specifically, Defendant contends that Wisconsin's 1991 definition of cocaine, like the Illinois definition in *Ruth*, refers to an undefined, all-encompassing category of "isomers" while the federal definition refers only to "optical and geometric isomers." ECF No. 1623 at 9–10. Moreover, the *Mathis* and *Ruth* holdings apply retroactively.

---

[4] *See* Wisconsin Circuit Court Access, *State v. James*, 1991CF910814, *available at* https://wcca.wicourts.gov (last visited Oct. 18, 2022); *see also* Pre-Sentence Report at 76 (1991 Wisconsin Conviction was for possession with intent to deliver cocaine).

*See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.").

*Ruth* explicitly left open the question of factual impossibility when comparing statutes. *Ruth*, 966 F.3d at 648. In other words, *Ruth* left open the question of whether a state statute could still be overbroad such that it no longer covers a predicate conviction for a federal recidivism statute where it lists conduct that is factually impossible. The Seventh Circuit confronted that question, and answered it in the negative, as applied to Wisconsin's definition of cocaine in *United States v. Turner*, 47 F.4th 509 (7th Cir. 2022). However, the factual impossibility raised in *Turner* pertains to Wisconsin's post-1991 definition of cocaine and refers to the factual impossibility of dealing in "esters or salts or esters of cocaine"—not to the breadth of the word "isomers."[5] *Id.* at 518–19.

Other than *Turner*, the Court has not located any case law construing Wisconsin's definition of cocaine in light of *Ruth*. The Court is thus persuaded that, like the Illinois statute in *Ruth*, the Wisconsin statute, as written in 1991, was overbroad as compared to federal law. That, in turn, disqualifies the 1991 Wisconsin Conviction as a Section 841 predicate that triggers the Section 851 enhancement. Thus, the applicable statutory range is the base level range under Section 841(b)(1)(A): 10 years to life, without any enhancement to the mandatory minimum.

---

[5]The *Turner* decision also considers and rejects textual mismatch arguments regarding cocaine analogs with a narcotic effect, which again pertains to the post-1991 definition of cocaine and is not before the Court on this motion. *Id.* at 517–18.
Page 10 of 19
Case 2:04-cr-00285-JPS   Filed 10/20/22   Page 10 of 19   Document 1639

test

Although parenthetical, the Court disagrees with Defendant on his second, alternative argument that the 1991 Wisconsin Conviction does not qualify as a predicate serious drug felony under Section 841(b)(1)(A), as amended by the First Step Act, because Defendant served less than one year for that conviction. As noted by the Eastern District of Virginia,

> § 401 [of the First Step Act] changed what qualifies as a predicate offense triggering a recidivist enhancement under 21 U.S.C. § 841(b)(1)(A). Specifically, under § 401, only a "serious drug felony" or "serious violent felony,["] defined as an offense for which an offender actually served a term imprisonment of more than one year, now qualifies as a § 851 predicate offense, rather than the previously included "felony drug offense," defined as an offense that is punishable by imprisonment of more than one year.

*United States v. Day*, 474 F. Supp. 3d 790, 795–96 (E.D. Va. 2020). The *Day* court further determined that the changes implemented through Section 401 may be raised on Section 404 motions. *Id.* at 800–01. This is so, notwithstanding language in Section 401 applying its changes to "any offense that was committed before the date of enactment of this Act [December 21, 2018], if a sentence for the offense has not been imposed as of such date of enactment," because Section 404, by its very terms, authorizes courts to "impose" a reduced sentence. *Id.* at 801. The *Day* court bolstered its reasoning with a determination that the word "impose" in Section 404 "contemplates a sentencing process that begins essentially *ab initio*, without any carry-over effect from the original sentence and with the full range of considerations typically at play during a sentencing." *Id.*

Page 11 of 19
Case 2:04-cr-00285-JPS   Filed 10/20/22   Page 11 of 19   Document 1639

However, the Seventh Circuit considered and held inconsistently with the *Day* court regarding language in Section 403 stating that its changes are to "apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *United States v. Uriarte*, 975 F.3d 596, 601 (7th Cir. 2020). In *Uriarte*, the Seventh Circuit explained that provisions such as the one quoted from Section 403, which is identical to that in Section 401, do not apply to defendants serving a sentence imposed prior to the enactment of the First Step Act.

Instead, the Seventh Circuit continued, this language indicates that the applicable amendments are to "apply to both pre-Act offenders who have never been sentenced and to pre-Act offenders whose sentences had been vacated before the date of enactment, but who had not been resentenced as of that date." *Id.* at 602; *see also United States v. Pearson*, 925 F.3d 913, 927 (9th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 140 S. Ct. 1291 (2020) ("In the First Step Act, Congress chose language that points clearly toward that same result: the date of sentencing in the district court controls application of the new, more lenient terms"; accordingly "[s]entence was 'imposed' here within the meaning of § 401(c) when the district court sentenced the defendant"); *see also United States v. Ruff*, 795 Fed. App'x 796, 797 (11th Cir. 2020) (same); *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019) (same). Defendant does not fall into either category; therefore, the Court must reject this argument. As mentioned, however, this analysis is merely parenthetical, as the Court has already determined that *Mathis* and *Ruth* apply.

In sum, the Court is left with a statutory range of 10 years to life, and a guidelines range of 360 to life. That is not to say, however, that the Court will not consider the Section 401 change to Section 841(b)(1)(A) as a factor in support of a reduced sentence, as it indicates that sentences imposed prior to the First Step Act would be "unusually long" as compared to today's standards. *United States v. Brown*, No. 06-CR-327-LA, 2020 WL 7401617, at *5 (E.D. Wis. Dec. 17, 2020) (citing *United States v. Vigneau*, 473 F. Supp. 3d 31, 36 (D.R.I. 2020)). Moreover, consideration of intervening changes of the law such as this—even if they do not apply retroactively—is required by *Concepcion*. 142 S.Ct. at 2404.

### 3.2 Section 3553(a) Factors

If a defendant is eligible for relief on a Section 404 motion, and once the court has determined the sentencing parameters, courts then assess whether a reduction is appropriate by undertaking a "complete review" of a defendant's case for relief. Pub. L. No. 115-391, 132 Stat. 5194, § 404(c); *see also United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020). "[C]omplete review" may include consideration of the sentencing factors listed in 18 U.S.C. § 3553(a); indeed, "doing so makes good sense." *Shaw*, 957 F.3d at 736. The Section 3553(a) factors include: (1) the nature and circumstances of the offense, and the history and characteristics of Defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense.

Apart from the Government's argument that Defendant's guidelines range remains the same, and that Defendant's sentence should not change because the triggering quantity for powder cocaine has remained the same despite changes by the Fair Sentencing Act to the quantity of crack cocaine, the Government rests in large part upon the Section 3553(a) factors. ECF No. 1630 at 7. The Government reiterates the severity and pervasiveness of Defendant's activities with the Cherry Street Mob. Specifically, the Government notes that Defendant allowed his mother's home to be used as a drug house, worked as a bodyguard for the operation, and threatened a witness following his arrest. *Id.* at 8 – 9 (citing *James*, 540 F.3d at 704–05; ECF No. 1592 at 27). The Government also attaches James' prison records, which reveal a series of infractions ranging from refusal to obey prison staff to possession of drugs and alcohol (as recently as this year), as well as possession of a weapon in his cell in 2009. ECF No. 1630-1.

On the other hand, Defendant briefs a wide variety of facts pertinent to the Court's consideration of the Section 3553(a) factors, as well as the Court's obligation to consider new facts under *Concepcion* and conduct a complete review of Defendant's case under the First Step Act. Defendant explains that, prior to commencing his sentence in this case, he had long suffered from mental illness and drug addiction. ECF No. 1623 at 15. Absent from his pre-sentence report at the time of sentencing, Defendant grew up in Chicago in one of the worst housing projects in the history of this country: the Henry Horner Homes. ECF No. 1638 at 6. He was raised in a building controlled by a gang known as the Gangster Disciples and witnessed violence, drug dealing, and gang activity every single day of his childhood. *Id.* Also absent from the pre-sentence report, Defendant only

dropped out of school after a teacher taunted him because his mother was on welfare. *Id.*

However, while in prison, Defendant was diagnosed with depression and anxiety and now manages his mental health through prescription medications. ECF No. 1623 at 16. He has also enrolled in and completed Narcotics Anonymous classes, as well as completed 18 different programs focused on building work skills. *Id.* at 16–17.

Defendant explains that he would have completed more programming but has focused his efforts on work opportunities. *Id.* at 17. He has spent years of his time in prison working in multiple industrial jobs, learning valuable skills, as well as in prison kitchens and as an orderly (the latter of which having been offered to him after he was observed to have an extraordinarily clean cell). *Id.* He has also completed the commercial driver license course and hopes to find work as a truck driver upon his release. ECF No. 1638 at 9.

In the interim, however, Defendant's health has declined. Defendant has developed diabetes, arthritis, chronic gastrointestinal disorders, and sleep apnea. *Id.* Defendant manages his conditions with over 10 different daily medications, though his time in prison has been made more difficult due to the recent onslaught of the COVID-19 pandemic. *Id.* at 17–18. On this point, Defendant argues that, in light of the rising costs of imprisonment, particularly of people with chronic health conditions, fiscal considerations also counsel in favor of a reduced sentence. ECF No. 1638 at 8 (collecting statistics on the high costs of incarcerating individuals with diabetes).

The Bureau of Prisons lowered Defendant's security level and moved him to a medium-security facility in 2014; indeed, his only infraction involving a weapon, as indicated by the records submitted by the Government, occurred in 2009. *Id.* at 17. The infraction was for possession of a weapon and was not for violent conduct. *Id.* Defendant has also worked hard to stay in touch with his children and siblings, who reside within the Eastern District of Wisconsin. *Id.* Defendant's sister has offered to house him upon his release. ECF No. 1638 at 11.

As to his participation in the Cherry Street Mob conspiracy, Defendant acknowledges that he was not a minor player and participated in the conspiracy for years. *Id.* at 19. He explains, however, that he served as an underling to one of the conspiracy's true leaders and was driven to participate by his own drug addiction over all else. *Id.* He argues that he did not use violence, has no history of violence, and that the Cherry Street Mob conspiracy overall resulted in no overdose deaths. ECF No. 1638 at 5. Defendant further argues that his initial sentence may have been greater than necessary, particularly given that his mandatory minimum is appropriately 10 years. ECF No. 1623 at 19. Moreover, other than co-Defendant Jarvis King, all of Defendant's other co-defendants have completed their sentences in this case. *Id.*

Defendant also argues, citing the Sentencing Commission's Interactive Data Analyzer, that a 30-year drug sentence is rare. *Id.* at 20. He explains that, after plugging his information into the tool, the average prison sentence for a man of his race, age, criminal history category, and in a crack cocaine case, was 122 months between the fiscal years 2016 and 2020. *Id.* Within the Seventh Circuit, he contends, that average drops to 118 months, and within Wisconsin federal district courts, to 65 months. *Id.* at

21. Citing the Judiciary Sentencing Information, "[t]he Sentencing Commission's other tool," Defendant explains that the average sentence over the past five years, based on his offense level, criminal history category, and the drug involved, was 275 months. *Id.* at 21.

Defendant concludes once again with an argument that these figures would be even lower with a one-to-one crack to powder ratio. *Id.* at 22. As explained above, the Court will not adjust Defendant's offense level based on policy arguments surrounding a one-to-one ratio barring Congress enacting such a ratio into law.

The Court, however, is persuaded that a sentence reduction is appropriate in light of the intervening changes in the law, which changes affect the sentencing parameters as explained above, coupled with the intervening changes in fact presented by the parties. While Defendant requests a hearing to present additional information to the Court, the Court has sufficient information before it to analyze anew both the sentencing parameters as well as other factors, including the Section 3553(a) factors, to give it a "complete review" of Defendant's case. Thus, a hearing is not required. *United States v. Hamilton*, 780 Fed. App'x 824, 826 (7th Cir. 2020); *see also United States v. Fowowe*, 1 F.4th 522, 530 (7th Cir. 2021).

After analyzing such intervening changes in law and fact, the Court determines that a reduced sentence, especially in light of the 17 years Defendant has already spent in prison, will reflect the seriousness of his offense, adequately deter him from future criminal conduct, and protect the public. Defendant's fragile physical and mental state make further significant rehabilitation in prison unlikely, and it is promising that Defendant has consistently sought work opportunities and has a family waiting for him in Wisconsin. Defendant also does not appear to have an

ongoing history of criminality, nor has he ever committed a violent offense. The fact that Defendant's mandatory minimum is now significantly below the guidelines range further supports a reduction in sentence. Thus, upon consideration of all the factors before it, the Court concludes that the only fair, just, and reasonable conclusion is to reduce Defendant's sentence to a total term of 240 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release.

4. **CONCLUSION**

In light of the foregoing, the Court will grant Defendant's motion for a reduction in his sentence pursuant to the First Step Act. Defendant's sentence shall be reduced to a total term of 240 months' imprisonment (of which he has already served approximately 17 years) to be followed by five years' supervised release.[6]

Accordingly,

**IT IS ORDERED** that Defendant Calvin James's motion for a reduction in his sentence pursuant to the First Step Act, ECF No. 1623, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Calvin James's motion to seal, ECF No. 1622, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Calvin James's sentence be reduced to a total term of 240 months' imprisonment (of which

---

[6] In its forthcoming amended judgment, the Court updates Defendant's conditions of supervised release, as written in the Court's judgment, dated February 6, 2007, ECF No. 1050, to comport with current Seventh Circuit case law. The Court also modifies some conditions of release in light of Defendant's current circumstances. Finally, the amended judgment will reflect that Defendant has paid the special assessment and fine imposed in his original judgment, ECF No. 1050 at 5, in full.

Page 18 of 19
Case 2:04-cr-00285-JPS   Filed 10/20/22   Page 18 of 19   Document 1639

he has already served approximately 17 years) to be followed by five years' supervised release; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to implement Defendant Calvin James's reduced term of imprisonment and reduced term of supervised release pursuant to the amended judgment that follows.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge